# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8945 | **DATE** | 3/19/2003 |
| **CASE TITLE** | GARCIA vs. CITY OF CHICAGO et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant City of Chicago's motion for summary judgment is granted in part and denied in part. Summary judgment is denied as to the count I excessive force claim and the count V conspiracy to conceal and deny meaningful access to courts claim against the defendant City of Chicago. Summary judgment is granted in favor of defendant City of Chicago and against plaintiff as to the state law claims in counts II, III, VI, and VII, and the First Amendment Violation claim in count IV. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | MAR 2 0 2003 | | |
| ✓ | Notices mailed by judge's staff. | | | date docketed | | |
| ✓ | Notified counsel by telephone. | | | | | 166 |
| | Docketing to mail notices. | | | docketing deputy initials | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | 3/19/2003 | | |
| | Copy to judge/magistrate judge. | CLERK | | date mailed notice | | |
| JS | courtroom deputy's initials | 03 MAR 20 AM 7: 53 | | JS | | |
| | | FILED TO TO | | mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE GARCIA,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )          No. 01 C 8945
                                        )
CITY OF CHICAGO, OFFICER ZAMIR          )
OSHANA, JOSEPH FIVELSON, and            )          **DOCKETED**
SARGON HEWIYOU                          )
                                        )          MAR 2 0 2003
            Defendants.                 )
                                        )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On November 20, 2001, plaintiff George Garcia ("Garcia") filed his original complaint in

this case, naming as defendants the City of Chicago ("City"), Officer Zamir Oshana ("Oshana"), and

an Unknown Chicago Police Officer. After more than fourteen months of pretrial proceedings before

this court and Magistrate Judge Denlow, on February 4, 2003, plaintiff Garcia filed his second

amended complaint, which named Joseph Fivelson ("Fivelson") as a defendant, along with the City

and Oshana, eliminated the Unknown Chicago Police Officer as a defendant, and in its place added

Sargon Hewiyou ("Hewiyou"). Counts I and IV allege excessive force and First Amendment

violations under 42 U.S.C. § 1983 against the City, Oshana, and Hewiyou. Count V alleges

conspiracy violations under 42 U.S.C. § 1983 against the City and Fivelson. Finally, counts II, III,

VI, and VII allege state law claims of assault, battery, *respondeat superior* liability, and

indemnification against the City, Oshana, and Hewiyou. The City has filed a motion for summary

1

judgment as to its liability on all counts.[1]  For the following reasons, the City's motion for summary judgment is granted in part and denied in part.   Summary judgment is denied as to the count I excessive force claim against the City and the count V conspiracy to conceal and deny meaningful access to courts claim against the City.   Summary judgment is granted in favor of the City and against Garcia as to the state law claims in counts II, III, VI, and VII, and the First Amendment claim in count IV.

## STATEMENT OF FACTS

### I. February 2, 2001

Plaintiff Garcia and defendant Officer Oshana had been good friends in the past.  Their friendship turned sour sometime in the middle of 2000, when Garcia and his girlfriend at the time, Kelly Lazo, had a difficult break-up and Oshana began dating her just one week after the break-up. After discovering that Lazo and Garcia were still calling each other, Oshana became angry and threatened to beat Garcia up.  Sometime after that, Oshana drove up to Garcia and again threatened to hurt him.  Garcia responded that if Oshana beat him up, Garcia would show the Chicago Police Department ("CPD") a photograph Garcia allegedly had of Oshana,  who is or was a member of a gang called the Assyrian Kings, making the Latin Kings gang sign with his fingers ("Photograph").

On February 2, 2001, Garcia was at his uncle's restaurant on the north side of Chicago around 6:00 p.m. when he saw Oshana's truck circling the restaurant.   Garcia then walked to the 20th District police station and reported Oshana's threats to beat him up and the existence of the Photograph.  Garcia then returned to the restaurant to pick up his brother.  As he was leaving the

---

[1]  Individual defendants Oshana, Fivelson, and Hewiyou did not file timely motions for summary judgment.  This court's determination is only as to the City's liability on each count in the second amended complaint.

restaurant with his younger brother and cousin, Oshana and a large man Garcia did not recognize, now identified as Sargon Hewiyou ("Hewiyou"), approached. Oshana was off-duty and on vacation on February 2, 2001, was wearing his street clothes, and driving his truck. Hewiyou, who is not a Chicago police officer, was wearing a microphone or walkie-talkie device on his shoulder of the sort usually worn by police officers, and a badge around his neck.

Oshana yelled at Garcia to "come here, you bitch, I want to talk to you." Garcia took his brother and cousin and continued walking. Hewiyou began to push Garcia and when Garcia tried to get away, Hewiyou identified himself and Oshana as police officers and showed Garcia a star-shaped badge attached to a wallet on a chain around his neck. Hewiyou began to strike Garcia, and Garcia attempted a ruse, stating that the police were coming or words to that effect. Hewiyou and Oshana responded that they were the police, and Oshana unzipped his jacket and showed Garcia his gun and his badge. As Oshana was beating Garcia up, Oshana asked where the Photograph was, and when Garcia did not answer, Oshana and Hewiyou attempted, unsuccessfully, to pull Garcia into Oshana's truck. Hewiyou and Oshana continued to punch, kick, and strike Garcia, causing, among other things, a broken nose, fractured eye orbital, and serious hip injuries. When Oshana went to pick up a metal garbage can, Garcia escaped and began to run away. Oshana put his hand on his gun and demanded Garcia stop. Hewiyou took out his gun and ordered Garcia to stop because he was a police officer and threatened to shoot Garcia if he didn't stop.

Garcia ran to the 20th District police station and reported what had happened. The police officers put out a radio broadcast concerning the incident and a description of Oshana's vehicle. The officers then drove around with Garcia looking for Oshana and Hewiyou. Garcia claims the search lasted approximately ten minutes. Afterwards, Garcia spoke with a police sergeant at the station

3

concerning the incident, who told Garcia that somebody from the Office of Professional Standards ("OPS") would contact Garcia.

Officer Paul Sedlacek ("Sedlacek") is Oshana's former partner. On the evening of February 2, 2001, Sedlacek was patrolling in his District when he saw a message on his personal data terminal indicating that a black truck which he knew from the license plate to be Oshana's was involved in some criminal activity. Sedlacek then contacted Oshana, found out where he was, informed Oshana about the details of the report, and told Oshana to call the 20th District to straighten it out. Sedlacek, however, did not contact anyone at the 20th District. Oshana then contacted the watch commander for his district, Lieutenant Cohnen ("Cohnen") and informed him of the situation. Cohnen asked where Oshana was and how long he had been there, and instructed Oshana to call Cohnen immediately if anyone from the 20th District arrived to arrest Oshana. The parties dispute whether Cohnen told Oshana not to "worry about it" if the 20th District did not show up. Nobody from the CPD contacted or arrested Oshana that evening, and Oshana, himself, did not contact the 20th District. Oshana was later told by Chicago Police Captain Robarts-Dillon that he should not contact the 20th District and should instead do nothing.

Garcia presents evidence that a few weeks after the beating, Oshana threatened two of Garcia's cousins and also confronted Garcia's friend and told him to tell Garcia not to pursue the matter of the beating. There is also evidence that in August 2001, Oshana's cousin told Garcia that if he did not "undo what he did" to Oshana, Garcia and his family would be killed.

II. Investigations

Garcia's case was assigned to defendant Fivelson from the Internal Affairs Division ("IAD"). Although Garcia's case was originally assigned to OPS, which is the CPD agency which customarily

4

handles excessive force cases, Garcia's case was reassigned to the IAD because the CPD determined that Garcia's battery allegations were intertwined with an investigation of Oshana's gang involvement, which required a "covert investigation." Fivelson conducted some surveillance of Oshana in February and March 2001, however ceased his surveillance because of the risk of jeopardizing the covert investigation. In March and April 2001, Fivelson also took written statements from witnesses who corroborated that Oshana had beaten Garcia up. After taking these witnesses' statements, no further investigation of the battery allegation was conducted by Fivelson, who testified that he did not interview any officers who worked in Oshana's District so as not to hinder the covert investigation into Oshana's gang activity, and did not interview Oshana's commander out of the fear that it might get back to Oshana that he was being investigated. Oshana has never been asked to speak to Fivelson, or anybody else at OPS or IAD, to address Garcia's battery allegations, and none of Oshana's friends or acquaintances have been interviewed. From August through October 2001, Oshana took a leave of absence for three months, during which time Fivelson states he could not further investigate Oshana. Oshana has never heard of Fivelson, and only first learned there was an investigation of Garcia's allegations a few months prior to his October 1, 2002 deposition.

Under the written standard operating procedures for CPD, the investigations of claims such as Garcia's are to be completed within thirty days. However, John Minogue ("Minogue"), the Assistant Deputy Superintendent in charge of IAD testified that the length of an IAD investigation depends upon the facts of the case and what avenues IAD has to take in a particular investigation and it is not unusual for an investigation to go on as long as two years without reaching a determination. The interview of an officer is generally the last thing that is done in an investigation. Minogue

5

further testified that IAD investigators speak regularly with the State's Attorney's Office about a criminal charge against a police officer that is being investigated by IAD, and that IAD reviews each case once a month in order to make a determination of whether to "sustain" or send the case to the State's Attorney's Office. In the present case, Garcia filed his original complaint in this lawsuit on November 20, 2001. Garcia presented some evidence that Fivelson was only prompted to "sustain" Garcia's complaint in January 2002 when he found out that Garcia filed a civil law suit over the incident. Oshana has since been charged criminally for the alleged beating of Garcia and stripped of his police badge.

Whether a battery complaint is made against a police officer or a citizen, the preliminary investigation is the same. After the preliminary investigation, the parties dispute whether the treatment of battery claims are different depending on whether the perpetrator is a police officer or a citizen. Garcia has presented some evidence that if the perpetrator of an alleged battery is a citizen and not a police officer, cases are referred to the State's Attorney's Office when the allegations constitute felony battery, which includes situations: (a) where there is great bodily harm, or (b) where the person battered is, on or about a public way, public property or public place of accommodation or (c) where it involves use of a deadly weapon. Garcia presents some evidence that, in contrast, when the accused is a police officer, the City's policy is that allegations of felony battery are eligible for referral to the State's Attorney's Office only when certain additional factors are present: broken bones, admission to the hospital, stitches/lacerations, injury resulting from being struck with a bludgeon or deadly weapon, death, or a media case. In addition, cases involving police officer batteries are eligible to be presented to the State's Attorney's Office only after IAD or OPS investigates and determines that the allegations will be "sustained." The parties also dispute

whether under the City's policy, further hurdles exist to the prosecution of police officers.

At his deposition, Fivelson testified that while he has "sustained" allegations against police officers besides Oshana during his tenure in IAD since 1984, he could not recall any of their names. In the past four years, Fivelson could not recall sending any case he was investigating to the State's Attorney for prosecution with the exception of Oshana. In 1999 and 2000, IAD investigated a total of 1,289 alleged civil rights violations but sustained only 11, less than 1% of those allegations. In 1999, 2000, and 2001, IAD investigated a total of 133 allegations against CPD officers which resulted in civil suits. OPS and IAD sustained none of these allegations in 1999, one in 2000, and none in 2001. In 1999 and 2000, OPS investigated a total of 5,390 allegations of excessive force but sustained only 334, approximately 6%, of those allegations. Garcia presented evidence that rank and file police officers in the CPD have knowledge of the rates at which discipline is imposed.

III. Hewiyou's Identity

At the time of the beating and up until January 22, 2003, Garcia did not know identity of the large man who allegedly beat Garcia with Oshana on February 2, 2001. When Garcia filed his original complaint on November 20, 2001, Garcia named an "Unknown Chicago Police Officer" as one defendant. On July 16, 2002, after Garcia filed a series of motions to compel, Magistrate Judge Denlow ordered the City to produce all documents relating to any investigation Fivelson was conducting with respect to Garcia's February 2, 2001 beating allegations. In response to Judge Denlow's order, Fivelson produced his file, but did not produce certain memos he created in March, June, and July 2002 discussing Ozzie Younan, who at the time Fivelson suspected as being the unknown male subject who assisted Oshana in battering Garcia. Despite Judge Denlow's production order of July 16, 2002, the City did not provide these memos to Garcia's counsel until October 2,

7

2002, after Garcia amended his complaint and added Fivelson as a defendant. The parties dispute the reason for the failure to produce these memoranda. It is undisputed, however, that Ozzie Younan has since been ruled out as the "John Doe," or "Unknown Chicago Police Officer," in Garcia's complaint.

At some time between November and December 11, 2002, Fivelson learned from Ken Beaudrau ("Beaudrau"), a federal agent investigating gang and narcotics activity involving Oshana, that Hewiyou was the missing second offender. After finding this out, Fivelson then spoke to Ann Head ("Head") at the State's Attorney's Office who also informed Fivelson that Hewiyou was the second offender. Fivelson did not relay this information to Garcia or Garcia's counsel. On December 11, 2002, Fivelson, Head, and Beaudrau met with Hewiyou. At that meeting Hewiyou stated that he did not admit to beating up Garcia sooner because he feared Oshana would be mad at him, and that when he finally did discuss this with Oshana, Oshana told Hewiyou that the police would cover up the fact Hewiyou hit Garcia. Fivelson "chuckled" about Hewiyou's statement, and did not ask any further questions about this statement. It is undisputed that Hewiyou has never been employed as a Chicago Police Officer. (Def.'s Local Rule 56.1(a) Statement, ¶ 5.)

Neither Garcia nor his counsel was informed of the new developments in Fivelson's investigation as to the unknown offender until five weeks later, on January 16, 2003, when assistant state's attorney Head asked Garcia to come in for a photo line-up regarding a newly-suspected second offender. The parties dispute the reason why Fivelson did not disclose to Garcia or his counsel the evidence with respect to Hewiyou after learning it on December 11, 2002. Garcia filed a Motion for a Rule to Show Cause on January 17, 2003. Fivelson produced a memo to Garcia and his counsel on January 22, 2003 summarizing Hewiyou's identity, the December 11, 2002 meeting,

and statements made at that meeting. Neither Hewiyou nor Beaudrau appeared for their noticed deposition prior to the date Garcia's response to the City's present motion for summary judgment became due. This court's extended discovery cutoff of January 31, 2003 has passed. The record does not indicate whether Garcia has had an opportunity yet to depose Hewiyou.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).

## ANALYSIS

As a preliminary matter, this court notes that both the City and Garcia spend a considerable portion of their briefs discussing whether Oshana was acting under the color of law at the time of the alleged incident. In making their extensive color of law arguments, what the parties seem to have overlooked is that it is the City's, not Oshana's, motion before this court. Any determination made by this court as to whether Oshana acted under color of law is not dispositive of summary judgment

on the *City's* liability.[2] Garcia claims that the City's policy and practice of failing to supervise and discipline its officers constitutes "deliberate indifference" to Garcia's rights and was the "moving force" behind the alleged constitutional violations against Garcia. On a municipal liability claim, the City policy itself must cause the constitutional deprivation. See City of Canton v. Harris, 489 U.S. 378, 379, 109 S.Ct. 1197, 1199-1200 (1989); Monell v. New York City Dept. of Soc. Services., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978); Gibson v. City of Chicago, 910 F.2d 1510, 1519 (7th Cir. 1990). Section 1983 does not allow for municipal liability based only on a theory of *respondeat superior*. See Monell, 436 U.S. at 690, 98 S.Ct. 2018; Gernetzke v. Kenosha Unified Sch. Dist. No. 1, 274 F.3d 464, 468 (7th Cir.2001). Therefore, "the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." Gibson, 910 F.2d at 1519-20. Accordingly, in making its determination as to the City's liability for Garcia's alleged constitutional deprivations, this court need not address or make a finding as to whether Oshana was acting under the color of state law.

I. Excessive Force

In count I of the second amended complaint, Garcia states a § 1983 excessive force claim against all defendants. As to the City's liability, Garcia alleges that as a matter of policy and

---

[2]When a plaintiff brings a claim under § 1983, he can sue a defendant in his official or individual capacity. See Hill v. Shelander, 924 F.2d 1370, 1372 (7th Cir. 1991). Personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law . . . Official capacity suits in contrast, generally only represent another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985). Because a suit against a public official in their "official capacity" is a suit against the entity of which that official is an agent, there no longer exists a need to bring official-capacity suits against local government officials. Id. at 166, 105 S.Ct. 3099; see also Richman v. Sheahan, 270 F.3d 430, 439 (7th Cir. 2001). In this case, because Garcia has sued the City as a separate party in this lawsuit, and the City is represented by separate counsel, Oshana is, therefore, being sued in his individual, not official, capacity.

practice, the CPD's failure to adequately train, supervise, and control its officers directly encouraged, and was thereby the moving force behind, Oshana's deprivation of Garcia's constitutional rights. Further, Garcia alleges that the CPD failed to adequately punish and discipline its officers for instances of conduct similar to Oshana's, which led Chicago police officers such as Oshana to believe their actions would never be scrutinized.

Municipalities and other governmental entities are "persons" within the meaning of § 1983, and as such, they can be "sued directly under § 1983 for monetary, declaratory, or injunctive relief [provided] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, (1978). But, the City may only be sued under § 1983 "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91, 98 S.Ct. 2018. Thus, in order for a claimant to prevail on a § 1983 claim against a municipal corporation, he or she must establish that the violations were part of a custom or policy of the municipality. See id. at 692, 98 S.Ct. 2018. Three types of municipal policy variants implicate § 1983 when constitutional rights are violated: 1) an express policy; 2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; and 3) the actions of a person with final policymaking authority. See Looper Maintenance Service Inc. v. City of Indianapolis, 197 F.3d 908, 912-13 (7th Cir. 1999).

Garcia has not alleged that an "express policy" exists not to supervise, control or discipline its officers with respect to excessive force violations, or that any named individual who possessed

final policymaking authority denied him a constitutional right. Instead, Garcia is attempting to establish liability against the City based on "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a 'custom and usage' with the force of law." Brokaw v. Mercer County, 235 F.3d 1000, 1013 (7th Cir. 2000). Garcia claims that it is the unwritten policy and practice in the CPD to protect and shield off-duty police officers who commit violence against citizens, and that because of this institutionalized differential treatment, off-duty officers are encouraged to believe that they can use violence with impunity. To establish municipal liability under the "widespread practice" theory, Garcia must show that the City's widespread practice is the "moving force" behind the constitutional violation in that the City's failure to train, supervise, and control its officers amounted to "deliberate indifference" to the rights of the City's inhabitants. City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205 (1989).

Garcia has presented evidence in the record that in the three years preceding his alleged beating, from 1999-2001, Fivelson and other IAD investigators examined 135 cases where someone had sued the CPD. In only one of the 135 cases was discipline recommended. Over the same time period, Fivelson and IAD investigated 1,289 alleged civil rights violation complaints against Chicago police officers, but "sustained," or presented to the State's Attorney's Office, only eleven of those allegations, less than 1%. In 1999 and 2000, OPS investigated a total of 5,390 allegations of excessive force, but sustained only 334 of those allegations, approximately six out of every hundred. When asked at his deposition, Fivelson, while maintaining that he has sustained cases, could not recall the names of any police officer against whom he has sustained an allegation during his employment in the IAD since 1984. In the last four years, Fivelson could not recall if he had

12

sustained any cases against any officers with the exception of Garcia's complaint against Oshana. There is evidence that the CPD officers have knowledge of the rates at which officers are disciplined.

Garcia has also submitted some evidence that the CPD applies a different standard for investigating or referring battery complaints to the State's Attorney's Office depending on whether the alleged perpetrator is a citizen or a police officer, and that these investigations are slanted in favor of the police officers. Garcia has presented the affidavit of his expert witness concluding that OPS investigations are not conducted to determine the truth of what happened, but rather to protect the image of the CPD, and that the quality of the investigations against police officers are incomplete, inadequate, and drawn out over time so as to have little or no deterrent effect with regard to police misconduct. Further, there is some evidence in the record that after the 20th District began its search for Oshana and his truck on the evening of February 2, 2001, Oshana's former partner Officer Sedlacek informed Oshana of the search but did not contact the 20th District. In addition, Lt. Cohnen, the watch commander in Oshana's district, also spoke to Oshana and learned Oshana's whereabouts but did not contact the 20th District. The parties dispute whether Cohnen told Oshana "not to worry about it." Oshana contends that Chicago Police Captain Robarts-Dillon also told Oshana not to contact the 20th District and instead to "do nothing." Finally, although Hewiyou has not yet been deposed, there is evidence based on Fivelson's testimony that Oshana made a statement to Hewiyou sometime in November 2002 about the police "covering-up" the fact that Hewiyou had hit Garcia.

The City, of course, disputes many of these facts, and presents some evidence to the contrary. However, taking all these facts in a light most favorable to Garcia and resolving all ambiguities in Garcia's favor, this court finds that Garcia has sufficiently presented a genuine issue of material fact

as to whether the City's action, or inactions, constitute a deliberate indifference to the use of excessive force on its citizens. A reasonable jury could infer that the City knew about and acquiesced in a widespread custom tolerating the tacit use of excessive force by its police officers over a substantial period of time. Therefore summary judgment as to count I against the City must be and is denied.

## II. First Amendment

In count IV, Garcia claims that the City violated his First Amendment rights because Oshana retaliated against Garcia after Garcia filed a report with the CPD regarding Oshana and the February 2, 2001 incident. Again, as discussed above, whether Oshana was acting under color of state law is not dispositive on the issue of the City's liability. The City can only be liable if Oshana's actions were "visited pursuant to governmental custom" and the alleged retaliation was part of a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." Looper Maintenance Service Inc, 197 F.3d at 912-13.

Here, Garcia appears to be arguing that the City retaliated against Garcia for filing a complaint against Oshana after he was beat up on February 2, 2001. Although it is not entirely clear from reading the second amended complaint and Garcia's memorandum in opposition to summary judgment, Garcia seems to be contending first that the City retaliated against Garcia by not investigating and disciplining Oshana after Garcia complained, and second, because the City made Oshana feel immune from the law, this caused or allowed Oshana to make certain threats to Garcia and his family to prevent Garcia from pursuing his complaint.

As to Garcia's first contention, this court does not find that the City's failure to investigate

14

and discipline Oshana to be evidence of retaliation against Garcia for exercising his right to report Oshana. A City policy for failure to investigate excessive force complaints and discipline officers is not equivalent a policy of deliberate indifference to retaliation against a citizen who reports an officer. For example, it is entirely possible for a municipality to encourage all its citizens to report police officer excessive force, yet never investigate or discipline the officers after they are reported. In other words, the City's failure to investigate or discipline does not deprive citizens of their First Amendment rights and, in this case, did not deprive Garcia of his right to report Oshana.

As to Garcia's second contention that because of Oshana's perception of immunity from the law, Oshana made certain threats to Garcia, his family, and his cousins, this court finds the connection too attenuated to constitute evidence of the City's "deliberate indifference" to officers who threaten citizens who file complaints against officers. Even accepting as true that Oshana threatened Garcia after he made a report against Oshana, Garcia has not presented any evidence that it was the practice of CPD officers to threaten people who filed complaints and that the City had a widespread policy that in essence permitted or condoned retaliation against those citizens. To the contrary, if, as Garcia asserts, an officer felt he was above the law and would never be disciplined for his actions, there would be no need to retaliate against or threaten citizens for reporting them since the officer would suffer no consequence from the citizen's complaint. Because this court finds Garcia has not established any issues of material fact with respect a City policy or custom which deprived Garcia of his First Amendment right, this court need not address the parties respective arguments as to whether Garcia's reporting Oshana even constituted protected speech under the First Amendment.

III. Conspiracy

Count V states a claim of conspiracy against the City alleging that the City denied him his

constitutional right to meaningful judicial access.[3]  The right of individuals to pursue legal redress

for claims which have a reasonable basis in law and fact is protected by the First and Fourteenth

Amendments.  See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741, 103 S.Ct. 2161,

2169 (1983); Vasquez v. Hernandez, 60 F.3d 325, 328 (7th Cir. 1995).  A corollary of this right is

that efforts by state actors to impede an individual's access to courts or administrative agencies may

provide a claim under § 1983.  See Vasquez, 60 F.3d at 328.  Judicial access must be "adequate,

---

[3]This court has had difficulty making sense of the various conspiracy claims Garcia
appears to be alleging against the City.  Although it is not clearly reflected in the general
allegations of the second amended complaint, in his memorandum in opposition to summary
judgment, Garcia appears to have broken down his count V conspiracy claims into three separate
claims: conspiracy to use excessive force, conspiracy to retaliate against Garcia's exercise of
First Amendment rights, and conspiracy to deny meaningful judicial access.  First, this court
notes that under Fed.R.Civ.P. 10(b), plaintiff is required to plead separate claims under separate
counts.  Selep v. City of Chicago, 842 F.Supp 1068, 1070 (N.D.Ill. 1993) (noting that multiple
claims in a single count is not condoned).   Next, as to his conspiracy to use excessive force and
conspiracy to retaliate claims, it is unclear whether Garcia is arguing separate conspiracy claims
against the City, in addition to his already existing count I excessive force and count IV First
Amendment claims against the City.

Garcia can only establish municipal liability against the City if he satisfies Monell.
Garcia presents the same Monell arguments and evidence to support his conspiracy to use
excessive force and conspiracy to retaliate against Garcia's exercise of First Amendment rights
claims as he presents to support his count I excessive force and count IV First Amendment
claims against the City.  Therefore, the count V conspiracy to use excessive force and conspiracy
to retaliate against Garcia for exercising First Amendment rights claims against the City are
redundant since they appear to be the same as the excessive force and First Amendment claims
against the city in counts I and IV; Garcia's constitutional injury in the conspiracy versus the
non-conspiracy claims are identical.

To the extent Garcia is alleging duplicative claims, this court grants summary judgment
in favor of the City and against Garcia on his count V conspiracy to use excessive force and
conspiracy to retaliate against Garcia's exercise of First Amendment rights.  Garcia's count V
conspiracy to conceal and deny access to courts claim, however, is not duplicative and therefore
will be fully addressed by this court.

effective, and meaningful." Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495 (1977). Therefore, when police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged. See Celafu v. Village of Elk Grove, 211 F.3d 416, 422-23 (7th Cir. 2000); Vasquez, 60 F.3d at 328.

However, "[n]ot every act of deception in connection with a judicial proceeding gives rise [to a constitutional action]." Vasquez, 60 F.3d at 329. Instead, Garcia must establish that the alleged conspiracy and concealment was to some extent successful in that it prevented him from pursuing his legal actions, contributed to the failure of those actions, or reduced the value of his actions. See Vasquez, 60 F.3d at 328-29 (an attempt to cover up police wrongdoing which succeeded only in briefly hiding the facts from plaintiffs, which ultimately neither prevented plaintiffs from pursuing relief nor reduced the value of their claim, was not actionable under § 1983); Gibson v. City of Chicago, 910 F.2d 1510, 1523-24 (7th Cir. 1990) (plaintiff cannot state a claim of denial of access to the courts without alleging some concrete injury resulting from the alleged cover-up); Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984) (when unlawfully concealed evidence hid true circumstances surrounding victim's death for twenty years, plaintiff's constitutional right to access was deprived); Kies v. City of Aurora, 149 F.Supp.2d 421, 424-25 (N.D.Ill. 2001) (plaintiff who pursued underlying tort action and succeeded at trial failed to establish a deprivation of constitutional right of access to the courts).

To begin, this court must first determine whether Garcia has been deprived of adequate, effective, and meaningful judicial access. Garcia contends that the CPD and Fivelson were aware that Garcia was actively searching for the identity of the unknown second offender who allegedly assaulted Garcia with Oshana, and were also aware that after several discovery extensions, this court

had set a deadline of January 31, 2003 for completion of discovery. Garcia alleges that despite this, Fivelson, who discovered Hewiyou's identity sometime in November through December 11, 2002, failed to disclose this information to Garcia until January 22, 2003, after Garcia was informed by the State's Attorney's Office of this development and filed a rule to show cause.

The City maintains that even if this is true, Garcia was not prohibited from seeking effective and meaningful redress in court because Garcia was a first-hand witness to the attack, has since been able to amend his complaint to add Hewiyou as a defendant, and will be able to pursue his tort claims against Hewiyou. Garcia contends that because he did not receive Hewiyou's identity until five business days before the extended discovery cut-off date, and Hewiyou did not appear for his noticed deposition prior to the date Garcia's response to the City's summary judgment motion was due, Garcia had to respond to the City's motion without any opportunity to depose Hewiyou. Garcia claims that he has effectively been deprived of any opportunity to pursue discovery as to Hewiyou, including the opportunity to question Hewiyou regarding his statement to Fivelson that Oshana stated the CPD would cover-up Hewiyou's alleged conduct in beating up Garcia. This court finds that based on the record and viewing all evidence in the light most favorable to Garcia, Garcia has presented sufficient evidence to create a genuine issue of material fact as to whether he has been deprived of his constitutional right of meaningful access to the judicial process.

While the City is correct that Garcia was able to promptly add Hewiyou as a defendant in this litigation, this does not bear upon Garcia's opportunity and ability to defend the City's present summary judgment motion without Hewiyou's deposition. With this opinion and order, this court is granting summary judgment in favor of the City on several of Garcia's claims. This court can only speculate as to what Hewiyou would have testified about during his deposition and what, if any,

effect Hewiyou's testimony would have had on Garcia's ability to fully defend summary judgment. It was, in fact, Hewiyou who allegedly beat Garcia together with Oshana on February 2, 2001. Perhaps Hewiyou's account of the incident would have created genuine issues of material fact as to whether Oshana was acting within the scope of his employment as a Chicago police officer. If this were the case, and it is impossible to know without Hewiyou's testimony, this court's grant of summary judgment in favor of the City on Garcia's *respondeat superior* and indemnification claims, see infra section IV, surely qualifies as a reduction in the value of Garcia's claims. Evaluating all the evidence, or lack thereof as the case may be, in the light most favorable to Garcia, and resolving all ambiguities in favor of Garcia, this court cannot state that no reasonable juror could find that by having to proceed forward without any discovery as to Hewiyou, Garcia's chances of recovery were prejudiced and he was therefore denied adequate, effective, and meaningful judicial access.

Finally, as always, because it is the City's liability at issue in the present motion for summary judgment, Garcia must satisfy the elements of Monell and establish that the concealment and deprivation of Garcia's constitutional right was visited pursuant to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915 (1988).[4] As discussed in detail at supra section I., Garcia has presented

---

[4]Although the City appears to concede that Garcia has established the existence of a "conspiracy," as neither party raises this issue in their briefs, this court nonetheless notes that the requisite "conspiracy" in Garcia's conspiracy claim against the City has been satisfied. In his Monell claim, Garcia is, in essence, contending that while it was Fivelson who allegedly withheld Hewiyou's identity from Garcia, it was the City's widespread custom and policy which was the "moving force" behind his actions, see Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978), constituting, therefore, a tacit agreement among all officers of the CPD.

evidence that despite the City's written policy detailing the investigation and discipline of officers who are accused of excessive force violations, the City's investigations are slanted in favor of protecting police officers and shielding them from discipline or prosecution. Garcia has also presented some evidence that battery claims against citizens are investigated differently than those against police officers, again for the purpose of protecting the officers and the image of the CPD. If the City's "custom and policy" was not to conduct legitimate investigations of accused officers, and not discovering or, in other words, concealing incriminating evidence against officers, a reasonable jury could conclude, in turn, that this custom or policy reduces the value or contributes to the failure of a victim's claims against that officer. Accordingly, this court finds that genuine issues of material fact preclude a grant of summary judgment in favor of the City as to Garcia's count V denial of judicial access claim. Most significantly, neither this court nor the parties have Hewiyou's deposition testimony to review to determine whether Garcia has in fact suffered any constitutional injury from the late disclosure of Hewiyou's identity.

## IV. SCOPE OF EMPLOYMENT

Finally, in counts II, III, VI and VII, Garcia seeks recovery from the City under *respondeat superior* liability and indemnification for the Officer Oshana's alleged assault and battery.[5] Under Illinois law, a municipality may be held liable for the tortious conduct of a police officer only when the act occurs in the scope of the officer's employment. See Wright v. City of Danville, 174 Ill.2d 391, 405. 675 N.E.2d 110, 117-18 (Ill. 1996). While "no precise definition" has been accorded the term "scope of employment," broad criteria have been enunciated. Taboas v. Mlynczak, 149 F.3d

---

[5]It is undisputed that Hewiyou was not and has never been employed as a Chicago police officer. (Def.'s Local Rule 56.1(a) statement, ¶ 5.)

20

576, 582 (7th Cir. 1998) (citing <u>Pyne v. Witmer</u>, 129 Ill.2d 351, 359, 543 N.E.2d 1304, 1308 (Ill. 1989)). An employee's action falls within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master." <u>Pyne</u>, 129 Ill.2d at 359, 543 N.E.2d 1304 (citing Restatement (Second) of Agency § 228 (1958)). While even criminal acts of an employee may fall within the scope of employment, "if the employee's actions are different from the type of acts he is authorized to perform or were performed purely in his own interest, he has departed from the scope of employment." <u>Wright</u>, 174 Ill.2d at 405, 675 N.E.2d at 119. The burden is on Garcia to show the contemporaneous relationship between the tortious act and scope of employment. <u>See</u> <u>Pyne</u>, 129 Ill.2d at 360, 543 N.E.2d at 1309.

Here, the record reveals that the conflict between Oshana and Garcia, who were once friends, involved Kelly Lazo, a woman Oshana was dating and who Garcia had previously dated. Oshana was angry because he believed Garcia was still calling Lazos. It is undisputed that Oshana's assault was also motivated by Garcia's threat to show the police department the alleged Photograph of Oshana making a gang sign about which Oshana asked Garcia during the assault. Oshana was off-duty and on vacation on February 2, 2001, and was with his friend Hewiyou, who is not a Chicago police officer. Oshana was not wearing his uniform or driving his squad car. Accepting as true Garcia's allegation that Oshana declared himself to be a cop and showed Garcia his badge and gun, the law of Illinois does not allow a police officer to confer authority on himself merely by declaring himself to be acting as a police officer. <u>See</u> <u>Wolf v. Liberis</u>, 153 Ill.App.3d 488, 493, 505 N.E.2d 1202, 1206 (Ill.App. 1 Dist. 1987) ("The law is well- settled in Illinois that an agent cannot confer power himself and his agency or authority cannot be established by showing what he said or did.").

21

Also, Garcia concedes that although Oshana flashed his badge and gun and announced that he was a cop, Garcia knew that Oshana was not trying to arrest him. (Def.'s Reply, Ex. 1 at 419-420).

Garcia also argues that according to CPD policy, police officers are always on duty and therefore, Oshana was acting within the scope of employment. Although departmental regulations might require a police officer to consider himself always on duty, this does not render every act of a police officer at any time a "performance of his duties as policeman." Karas v. Snell, 11 Ill.2d 233, 251, 142 N.E.2d 46, 57 (Ill. 1957); see also Wolf v. Liberis, 153 Ill.App.3d 488,494, 505 N.E.2d 1202, 1207 (Ill.App. 1 Dist. 1987) ("rule defining police officers as being 'on-duty' at all times serves purposes of internal discipline" and "does not support a conclusion that all of the acts of a police officer are therefore within the scope of his employment"). There record is void of any evidence that Oshana's assaulting Garcia had any relation to Oshana's position as a police officer; an unprovoked attack and beating of a citizen is "an action obviously different from those [Oshana] [was] authorized to perform." Wright v. City of Danville, 174 Ill.2d 391, 406, 675 N.E.2d 110, 118 (1996). While a police officer who is acting to prevent crime, or responding to an emergency, even if not officially on duty, is performing his duties as a police officer, see Wolf v. Liberis, 153 Ill.App.3d 488, 494, 505 N.E.2d 1202, 1207 (Ill.App. 1st Dist. 1987); Banks v. City of Chicago, 11 Ill.App.3d 543, 548, 297 N.E.2d 343, 348 (Ill.App. 1st Dist. 1973), Garcia has presented no evidence that Garcia was preventing a crime or responding to an emergency. To the contrary, Garcia claims that Oshana was perpetrating, not preventing, a crime and that any emergency which existed was created by Oshana himself.

Upon review of the record in this case, this court finds that Garcia has not established a genuine issue of material fact which requires a trial. Under Illinois law, Oshana's actions only fall

under the scope of his employment if they were "actuated, at least in part, by a purpose to serve the master." <u>Taboas</u>, 149 F.3d at 583; <u>see also</u> Restatement (Second) of Agency § 235 (employee's act is not within scope of employment "if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed").  Garcia has not presented any evidence that Oshana's acts were committed for any reason other than his pure personal benefit. Accordingly, based upon the undisputed facts,  this court finds as a matter of law that Oshana was not acting within his scope of employment in the February 2, 2001 beating incident.

CONCLUSION

For all the foregoing reasons, the City's motion for summary judgment is granted in part and denied in part.  Summary judgment is denied as to the count I excessive force claim against the City and the count V conspiracy to conceal and deny meaningful access to courts claim against the City. Summary judgment is granted in favor of the City and against Garcia as to the state law claims in counts II, III, VI, and VII, and the First Amendment Violation claim in count IV.   The parties are again urged to discuss settlement.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

DATE: March 19, 2003

23