# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8945 | **DATE** | 4/7/2003 |
| **CASE TITLE** | GARCIA vs. CITY OF CHICAGO et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Pursuant to Memorandum Opinion and Order entered this day, defendant City of Chicago's motion for reconsideration is denied. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

JS

courtroom deputy's initials

U.S. DISTRICT COURT
CLERK
03 APR -8 AM 7:46

APR 08 2003
date docketed

4/7/2003
date mailed notice

JS
mailing deputy initials

Document Number

203

Date/time received in central Clerk's Office

01 of 10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE GARCIA,                          )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )       No. 01 C 8945
                                        )
CITY OF CHICAGO, OFFICER ZAMIR          )
OSHANA, JOSEPH FIVELSON, and            )
SARGON HEWIYOU                          )
                                        )
        Defendants.                     )
                                        )



DOCKETED
APR 0 8 2003

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On March 19, 2003, this court denied defendant City of Chicago's ("City") motion for summary judgment as to counts I and V of plaintiff George Garcia's ("Garcia") second amended complaint and granted summary judgment in favor of the City as to counts II-IV and counts VI-VII. On March 27, 2003, the City filed a motion for reconsideration of this court's denial of summary judgment as to counts I and V. For the following reasons, the City's motion is denied.

### I. Color of Law Determination

First, the City contends that this court erred in not making a determination as to whether Garcia had presented sufficient evidence to create a genuine issue of material fact with respect to whether defendant Zamir Oshana ("Oshana") was acting under color of law when he allegedly beat Garcia. The City argues that if Oshana was not acting under color of law when he allegedly beat Garcia, the count I excessive force claim against the City would fail. In support of its argument, the

1

City cites to the Supreme Court case <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573 (1986), in which the Court held that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." The City then reasons that if Oshana was not acting under color of state law, he could not have violated Garcia's rights under the Fourth Amendment, which only applies to state action, and consequently, because Garcia had not suffered any constitutional injury, no claim could stand against the City.

The law is clear that a constitutional injury is a necessary element of any municipal liability claim. <u>See</u> <u>Collins v. City of Harker Heights, Texas</u>, 503 U.S. 115, 121, 112 S.Ct. 1061 (1992) (emphasizing "the separate character of the inquiry into the question of municipal responsibility and the question whether a constitutional violation occurred."); <u>see also</u> <u>Tesch v. County of Green Lake</u>, 157 F.3d 465, 477 (7th Cir. 1998) (a constitutional violation is a necessary element of the claim against the municipality); <u>Estate of Phillips v. Milwaukee</u>, 123 F.3d 586, 597 (7th Cir. 1997) (same). Section 1983 only protects plaintiff Garcia from the conduct of a "state actor." However, the city errs in its contention that "if Zamir Oshana was not acting under color of law when he beat plaintiff, the plaintiff's Fourth Amendment right not to be unreasonably seized was not violated." (Def. City's Mot. for Reconsideration at 3.) First, although there is no dispute of material fact that Oshana was a Chicago police officer at the time, whether he was acting as a police officer and whether he used the authority of his office at the time remains an issue of material fact. Second, a conclusion that Oshana was not acting under color of state law is not dispositive of Garcia's claim against the City for municipal liability.

Section 1983 provides a remedy against "any person" who, under color of state law, deprives

2

another of rights protected by the Constitution and in <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018 (1978), the Supreme Court held that Congress intended municipalities and other local government entities, such as the City, to be included among those "persons" to whom § 1983 applies. See <u>Collins</u>, 503 U.S. at 120, 112 S.Ct. 1061. "On a municipal liability claim, the City policy itself must cause the constitutional deprivation. Therefore, the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the color of law requirement under §1983." <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1519-20 (7th Cir 1990) ; <u>see</u> <u>Berry v. City of Muskogee</u>, 900 F.2d 1489, 1499 (10th Cir. 1990) (quoting <u>City of Springfield v. Kibbe</u>, 480 U.S. 257, 268, 107 S.Ct. 1114 (1987)) (concluding that although neither the defendant city nor any of its employees or agents actually caused the plaintiffs' injury, "'a jury reasonably could conclude that the city's conduct was the moving force in bringing about the constitutional violation'"); <u>Stoneking v. Bradford Area School Dist.</u>, 882 F.2d 720. 724-25 (3rd Cir. 1989) (in suit against school district based on alleged sexual abuse perpetrated by school band director, court noted that for purposes of the "color of law" requirement, it was immaterial whether the band director was acting under color of law; the suit was against the school district based on a policy or custom of reckless indifference to instances of known or suspected sexual abuse, and the school district was "incontestably acting under color of state law"); <u>see also</u> <u>Brown v. Commonwealth</u>, 2000 WL 562743 at *7-8 (E.D.Pa. 2000) (explaining that the trial court must "evaluate a plaintiff's municipality liability claims separately from the claims against the individual municipal employees" and rejecting defendant Commonwealth of Pennsylvania's argument for dismissal of municipal liability claim on the basis that there was no constitutional violation by a municipal employee); <u>Rodriguez v. City of Milwaukee</u>, 957 F.Supp 1055, 1060-61 (W.D. Wisc.

3

1997) (finding that the court "may look at the color of state law issue, but not find it dispositive of the municipal liability issue"); Myatt v. City of Chicago, 816 F. Supp 1259, 1265 (N.D.Ill. 1992) ("While it is helpful, and possibly dispositive, to determine whether the defendants here were acting as employees of the City at the time of the incident, even if defendants were not acting as City employees, municipal policies may still have been the moving force behind [plaintiff's] alleged constitutional violations . . . if they acted pursuant to the City's alleged "code of silence"); Garrison v. Burke, 1993 WL 29909, at *2 (N.D.Ill. 1993) ("[W]hether a state actor is found to have acted under color of state law is not dispositive of municipal liability."); Thomas v. Cannon, 751 F.Supp. 765, 769 (N.D.Ill. 1990) (same); Padilla v. D'Avis, 580 F.Supp. 403, 406 (N.D.Ill 1984) (municipality's liability is not dependent on whether employee engaged in "state action"; rather, the City's direct liability, via a policy or custom, is itself the requisite "state action").

Considering that the "state actor" is the City, the next relevant inquiry is whether Garcia has suffered a constitutional injury of excessive force. See County of Sacramento v. Lewis, 523 U.S. 833, 854, 118 S.Ct. 1708, 1720 (1998) (not every wrong committed by a state actor is actionable under § 1983; only those wrongs that rise to a constitutional violation are actionable). A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen . . . ." Graham v. Connor, 490 U.S. 386, 395 n.10, 109 S.Ct. 1865, 1871 (1989). As in other Fourth Amendment contexts, the "reasonableness" inquiry in an excessive force case is an objective one; the question is whether the actions at issue are "objectively reasonable" in light of the facts and circumstances confronting the actor, without regard to any underlying intent or motivation. Id. at 397, 109 S.Ct. 1865. In this case, this court finds that Garcia has presented sufficient evidence to

4

create a dispute of material fact as to whether his Fourth Amendment right to be free from objectively unreasonable seizure was violated.[1]

II. Policy or Custom

In order to establish a Monell violation, in addition to establishing that he has suffered a constitutional injury, Garcia must also establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989). Municipalities may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120-21, 112 S.Ct. 1061 (1992) (citing Monell, 436 U.S. at 691, 98 S.Ct. 2018). A municipality "cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior theory.*" Id. at 121, 112 S.Ct. 1061. Instead, "it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

In City of Canton, the Supreme Court held that a municipality can, in some circumstances, be held liable under § 1983 for constitutional violations resulting from its failure to train municipal employees. See City of Canton, 489 U.S. at 380, 109 S.Ct. 1197. Monell's rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation requires a determination as to "whether the [program at issue] is adequate" and if it is not, "whether such inadequate [training, supervising or controlling] can justifiable be said to represent city policy." Id.

---

[1]This court notes that in City of Los Angeles v. Heller, 475 U.S. 796, 797-98, 106 S.Ct. 1571 (1986), the Court's holding was based on the finding that no "unreasonable force" had been used against the plaintiff.

at 389-90, 109 S.Ct. 1197. The inadequacy of police training, supervision, or control, may serve as a basis for § 1983 liability only where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact," such that its policies can be said to be "the moving force behind the constitutional violation." Id. at 388-89, 109 S.Ct. 1197. Put another way, a plaintiff seeking municipal liability must establish that "the need for more or different training [supervision or discipline] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390, 109 S.Ct. 1197. The relevant question is whether Garcia's injury would have been avoided had the City adequately investigated, disciplined, and prosecuted its police officer employees, instead of protecting them from taking responsibility for their misconduct. Id. at 391, 109 S.Ct. 1197 (asking "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?").

In its motion to reconsider, the City maintains that Garcia did not present sufficient evidence to show a genuine issue of material fact as to whether Oshana's alleged actions in beating Garcia, and Fivelson's actions in allegedly failing to investigate Oshana or to provide Hewiyou's identity to Garcia, were directly caused by a City custom of failing to discipline or prosecute its police officer employees. The City argues that "to say that 'the City' knew about and acquiesced in a practice requires proof that the City's *final policymakers* knew about and acquiesced in that practice." (Def. City's Mot. for Reconsideration at 4.) The City cites to Latuszkin v. City of Chicago, 250 F.3d 502 (7th Cir. 2001) in support of its argument even though Latuszkin was in a factually and procedurally different posture than the case at bar when received by the Seventh Circuit. In Latuszkin, the Seventh Circuit concluded that the plaintiff's complaint did not allege any facts tending to show that

6

city policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that the city policymakers should have known about the behavior. See Latuszkin, 250 F.3d at 505. The Latuszkin court found that the only specific individuals identified by the plaintiff as directly involved in the conduct at issue were police department superior officers and supervisors, who do not qualify as policymakers for the City. See id.

There are, however, three types of municipal policy variants which implicate §1983 when constitutional rights are violated: 1) an express policy; 2) a widespread practice that, although not authorized by written law or express municipal policy is so permanent and well-settled as to constitute a custom or usage with the force of law; or 3) the actions of a person with final policymaking authority. See Looper Maintenance Service Inc. v. City of Indianapolis, 197 F.3d 908, 912-13 (7th Cir. 1999). In Latuszkin, after concluding that there was no basis to find that any city policymakers' were directly involved in the acts at issue, which is a finding under the third method of establishing a municipal policy, the Seventh Circuit went on to find that furthermore, "nothing in Mr. Latuszkin's complaint suggests that a few parties held in a police department parking lot should have come to the attention of City policymakers." Latuszkin, 197 F.3d at 505. This determination constitutes a finding under to the second method of proving a municipal policy existed, whether there was a widespread practice. In this case, it is true that Garcia did not present evidence that the final policymaker for the City of Chicago, the City Council, directly participated in the failure to investigate and discipline Chicago Police officers who allegedly committed acts of excessive force. Instead, this court's denial of summary judgment was based upon Garcia's presentation of evidence that the failure to investigate and discipline was "so persistent and widespread that the City policymakers *should have known* about the behavior." Latuszkin, 197 F.3d

at 505 (emphasis added); see also Jackson v. Marion County, 66 F.3d 151, 152 (7th Cir.1995) ("The usual way in which an unconstitutional policy is inferred . . . is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of the subordinate officers."). As discussed in this court's March 19, 2003 opinion and order, this court found that Garcia presented sufficient evidence to proceed to trial on this issue.

The City also contends that Garcia did not present sufficient evidence that the City policymakers should have known of the likelihood that the custom or policy would result in constitutional violations by its officers, as required under City of Canton. However, as this court discussed in its March 19, 2003 opinion ruling on the City's summary judgment motion, evaluating all the facts in the light most favorable to Garcia, and drawing all reasonable inferences in Garcia's favor, a reasonable juror could conclude that a custom or policy of not investigating alleged misconduct of police officers, whether they are acting under color of law or as private citizens, would result in police officers, such as Oshana, believing they could use excessive force against civilians, such as Garcia, with impunity.

III. Denial of Access to the Courts

As to Garcia's count V denial of judicial access claim, the City contends first that because Hewiyou has now been identified and Garcia has sued Hewiyou, that Garcia cannot establish a denial of access to the courts. This court rejects the City's argument based on the same reasoning detailed in this court's March 19, 2003 opinion and order. The City also argues that because Garcia's counsel has now had an opportunity to depose Hewiyou, and it is clear that Hewiyou's testimony

does not aid Garcia, Garcia's claims have not been diminished in value and he has not been denied access to the courts. In response, Garcia argues that although Hewiyou has been deposed, because of the alleged failure to investigate the beating and the subsequent concealment of Hewiyou's identity, Garcia was deprived, for the final six weeks of discovery, of the opportunity to use Hewiyou's testimony to develop a summary judgment record to defeat summary judgment on his claims against the City.

At the summary judgment stage, this court must view all the evidence in the light most favorable to Garcia and draw all reasonable inferences in Garcia's favor. This court will not speculate at this stage about how the alleged failure to investigate Oshana and the late disclosure of Hewiyou's identity, may have reduced the value of Garcia's claims against the City. Again, as discussed in this court's March 19, 2003 opinion and order, this court finds Garcia has presented sufficient evidence to proceed to trial on his denial of access to the courts claim. Accordingly, this court denies the City's motion to reconsider this court's denial of summary judgment as to Garcia's count V claim against the City.

## CONCLUSION

For the foregoing reasons, the City's motion for reconsideration is denied. All previously set dates remain.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: April 7, 2003

9