Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8945 | **DATE** | September 19, 2003 |
| **CASE TITLE** | GARCIA vs. CITY OF CHICAGO et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiff is awarded attorneys' fees and costs in the amount of $647,951.81. Defendant City of Chicago is directed to pay this amount by October 21, 2003, with interest from the entry of judgment until paid. There being no just reason for delay, judgment is entered pursuant to Rule 54(b).

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | SEP 1 _ 2003 | |
| X | Notified counsel by telephone. | | date docketed | 312 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9-19-03 date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE GARCIA, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, OFFICER ZAMIR OSHANA, JOSEPH FIVELSON, and SARGON HEWIYOU, <br><br> Defendants. | No. 01 C 8945 <br><br> DOCKETED <br><br> SEP 1 0 2003 |

MEMORANDUM OPINION AND ORDER AWARDING
PLAINTIFF ATTORNEYS' FEES AND COSTS

On May 2, 2003, a jury returned a verdict in favor of plaintiff George Garcia ("Garcia") against defendant City of Chicago ("City") and found Garcia's damages to be in the amount of $1,000,000.00. The City filed post-trial motions. Each has been denied in separate orders entered today because the City's liability was clearly and properly proven. As to damages, however, City's alternative request for remittitur has been granted. The jury's verdict has been remitted to $250,000.00. Garcia may accept the remittitur or proceed with a new trial against the City on damages.

As the prevailing party in this case, Garcia has moved, pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54, to recover the reasonable attorneys' fees and costs he incurred in litigating his § 1983 claim against the City. This court believes that had Garcia not been represented by the outstanding attorneys he had, the City's violations of his civil rights may not have been established. Garcia has requested a total of $681,735.95 in attorneys' fees and costs. The City

1

has opposed this request but offered no alternative amount. For the reasons explained below, Garcia's fee petition is granted in part and denied in part. Garcia is awarded $647,951.81 in attorneys' fees and costs.

## DISCUSSION

Twenty years ago, the Supreme Court set forth the two-step approach for district courts to use in determining the reasonable fee for the prevailing party in civil rights cases. Hensley v. Eckerhart, 461 U.S. 424, 433-35 (1983). First, the Court explained that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," commonly referred to as the lodestar amount. Id. at 433. Second, considering numerous factors, many of which are subsumed within the initial lodestar calculation, this court may adjust the fee upward or downward. Id. at 434.

I.   The Lodestar Analysis

   A.   Reasonable Hourly Rates

The Seventh Circuit has stated that "[t]he reasonable hourly rate (or 'market rate') for lodestar purposes is 'the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.'" Harper v. City of Chicago Heights, 223 F.3d 593, 604 (7th Cir. 2000) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999)). Garcia has the burden of proving the market rates for his attorneys, Loevy & Loevy ("L & L"). Id. at 604-05. Evidence of "market rate" includes rates other attorneys in the area charge paying clients for similar work, fee awards from prior cases, the attorney's credentials, and the attorney's actual billing rate. See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1311-13 (7th Cir. 1996). In addition, an attorney's affidavit alone cannot establish his or her market rate; however, such affidavit "in conjunction with other evidence of the

2

rates charged by comparable lawyers is sufficient to satisfy the plaintiff['s] burden." Harper, 223 F.3d at 604. Once the prevailing party provides evidence establishing his or her attorneys' market rates, the losing party has the burden of demonstrating why a lower rate should be awarded. People Who Care, 90 F.3d at 1313.

This court will now explain how it has determined the reasonable hourly rate for each attorney and legal professional for which plaintiff Garcia seeks fees.

1. The court finds $295/hour to be a reasonable rate for Jon Loevy

The hourly rate of $295 which Jon Loevy has requested is a bargain for his services. Jon Loevy is an outstanding trial lawyer. His ability belies his years of experience, and he certainly should not be held in a lock-step position based on his law school graduation year with regard to his hourly rate. He clearly could command an hourly market rate of $325 to $350 because of his courtroom ability. Not only did Jon Loevy display tremendous advocacy skills during the trial before the jury, he handled all the matters involved in this litigation with great aplomb. His case was well-organized. The evidentiary progression was easy to follow. His examinations of adverse witnesses Oshana, Hewiyou, and Fivelson, and his dealing with the sometimes improper tactics of his opposing counsel, were highly professional.

Jon Loevy's poise, analysis, and demeanor in front of the jury, as well as his rappier-like cross-examination style, are reminiscent of the trial skills displayed by some of the nationally recognized trial lawyers in this community when they were the age that Jon Loevy is now.[1] Additionally, Jon Loevy's overall performance ranks among the finest displays of courtroom work

---

[1] Among those nationally recognized trial lawyers whose trial skills the court is familiar with when they were Jon Loevy's age are: Royal B. Martin of Martin, Brown and Sullivan; Michael D. Monico of Monico, Spevack and Pavich; Thomas R. Mulroy of McGuire Woods; Anton J. Valukas of Jenner & Block; and Dan K. Webb of Winston & Strawn.

3

by a plaintiff's lead trial counsel that this court has presided over in several years.[2] Because the court will cap Jon Loevy's hourly rate at the amount he requested, the court finds $295/hour to be reasonable.

2. The court finds $295/hour to be a reasonable rate for Arthur Loevy

While the court believes Jon Loevy's rate of $295/hour is low for a lawyer with the skills Jon Loevy displayed at trial, the court is only able to assess the value of Arthur Loevy's time based upon the post-trial submissions because his active participation at the trial was limited and his primary work in the case was taking the depositions necessary to build a successful case during the pretrial discovery phase of this litigation.

To analogize to the English legal system, Arthur Loevy's role in the case was that of a solicitor who prepares the case for trial and instructs the barrister regarding the case, and Jon Loevy's role was that of a barrister, the courtroom advocate who presents the case to the judge and jury. This court has no doubt that some of the brilliance shown by Jon Loevy during the trial was due in no small measure to Arthur Loevy's pretrial analysis, planning, strategy, and discovery prowess, as well as the sage wisdom imparted by Arthur Loevy to Jon Loevy, his son. The court, however, believes that the City's argument, that Arthur Loevy should have a market rate no higher than Jon Loevy, is reasonable. Therefore, the court finds that Arthur Loevy's reasonable billing rate in this case to be the same as that requested by Jon Loevy, $295/hour.

---

[2] Other past outstanding trial work by a plaintiff's lead counsel before this court included: the work of James R. Figliulo of Figliulo & Silverman, plaintiff's counsel in a trial dealing with real estate rights, RTA v. Gibbons, 81 C 43, which resulted in a verdict for his clients of $24,544,830 on February 16, 1996, and was affirmed on appeal at 125 F.3d 420 (7th Cir. 1997); and that of Robert G. Krupka of Kirkland & Ellis, counter-plaintiff's lead counsel in the trial of a patent infringement case, WMS Industries v. International Game Technology, 94 C 3062, which resulted in a verdict of $10,753,550 for his client on February 28, 1997, and was affirmed under the doctrine of equivalents on appeal at 184 F.3d 1339 (Fed. Cir. 1997).

4

3. <u>The court finds $250/hour to be a reasonable rate for Michael Kanovitz</u>

Michael Kanovitz's clients who pay him $275/hour are probably receiving fair value for his legal services in the litigation to which Mr. Kanovitz referred in his affidavit. In this litigation, the court finds, based upon the court's review of the materials in the record, that a lawyer of comparable skill and experience to Michael Kanovitz would have a market billing rate in the $225 to $275 range. Selecting the mid-level of this range, the court finds $250/hour to be a reasonable hourly rate for Mr. Kanovitz.

4. <u>The court finds $220/hour to be a reasonable rate for Jon Rosenblatt</u>

Although Jon Rosenblatt's requested hourly billing rate of $240 is within the reasonable range of $200 to $240, which this court finds to be the market rate of comparable counsel, the court finds, as it has with the other plaintiff's lawyers, that an award of hourly fees at the mid-level of the reasonable range is appropriate. The City's reference to the affidavit of Shehnaz Mansuri submitted in other litigation in May of 2002, contained in Exhibit K to the City's Response seeking $200/hour in fees for legal work by Ms. Mansuri, is an appropriate low-end benchmark. Based upon all the materials, including Ms. Mansuri's $200 hourly rate in 2002, the court finds $220/hour to be the reasonable rate for Mr. Rosenblatt.

5. <u>The court finds $190/hour to be a reasonable rate for Amanda Antholt</u>

Using the same benchmark suggested by the City for Ms. Mansuri in 2002, to which the court referred above, plus all the other materials submitted in the record, the court finds that Ms. Antholt's reasonable rate per hour is $190, which is the mid-level of the $180 to $200 range the court finds to be the market rate range for attorneys of comparable skill and experience to Ms. Antholt.

### 6. The paralegals' rate of $100/hour requested by plaintiff is reasonable

In this district, countless fee petitions have been approved over the past several years where the parties have sought fees in the range of $100/hour or more for paralegal work. See, e.g., In re Aimster Copyright Litigation, 2003 WL 2002764, at *6 (N.D. Ill. April 15, 2003) (approving fees for paralegal work at $126/hour). Therefore, the reasonable rate of $100/hour for paralegal assistance will be awarded.

### 7. Summary of reasonable hourly rates found by the court

In summary, the court has found the following hourly rates to be reasonable in this case:

| | |
|---|---|
| Jon Loevy | $295 |
| Arthur Loevy | $295 |
| Michael Kanovitz | $250 |
| Jon Rosenblatt | $220 |
| Amanda Antholt | $190 |
| Paralegals | $100 |

These hourly rates will therefore be used in the lodestar calculation in this case.

### B. Hours Reasonably Expended

Under a fee shifting statute like § 1988, Garcia may recover only those hours that his attorneys would bill in the private sector. Hensley, 461 U.S. at 434. Like lawyers in private practice, Garcia's attorneys must exclude hours that are excessive, redundant, or otherwise unnecessary. Id. In addition, a petition for fees should set forth a sufficient description of the type of work performed. Kotsilieris v. Chalmers, 966 F.2d 1181, 1187 (7th Cir. 1992). In Harper, the Seventh Circuit explained that "[a]s to the reasonableness of the hours expended, when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." Harper, 223 F.3d at 605. However, the amount of itemization and

detail required is a question for the market. In the Matter of Synthroid Mktg. Litig., 264 F.3d 712, 722 (7th Cir. 2001). A court should not require any more than the level of detail paying clients find satisfactory. Id.

The City advances several arguments in support of its position that the hours expended by L & L are unreasonable and excessive. (Def.'s Resp. at 13.) Although L & L's time records are neither models of clarity nor entirely devoid of the discrepancies the City's counsel points out, this court cannot find that L & L's hours on the whole are unreasonable. As plaintiff points out in his memorandum in support and supplemental petition, he seeks compensation for 2,194.5 hours of L & L attorney time and 24.5 hours for legal assistant time.[3] Almost certainly, L & L has expended less time on this case than the City's lawyers. The City's primary outside law firm in this case, Ancel, Glink, Diamond, Bush, DiCianni & Rolek, P.C. ("Ancel Glink"), spent at least 1,457 hours of attorney time and 442 hours of legal assistant time,[4] about eighteen times the legal assistants' time sought by plaintiff. (Pl.'s Mem. in Supp., Ex. G.) The firm of Hervas, Sotos, Condon & Bersani, P.C. ("Hervas Sotos"), which also was retained by the City, worked more than 76 hours on this case. (Id.) In addition, this court is certain that co-defendant Fivelson's counsel, David Zinder, spent well

---

[3] In his initial memorandum and supplemental petition, plaintiff has provided documentation supporting the hours of each legal assistant. (Pl.'s Mem. in Supp., Ex. F; Pl.'s Supplemental Pet., Exs. B, D.) Although documentation for two of the paralegals (and, as discussed in the text below, some of the costs) was insufficient in plaintiff's initial petition, this court will consider documentation provided with the supplemental petition. In fairness to both sides and to ensure that plaintiff was not given an unfair advantage, City was given, and took advantage of, an opportunity to respond to plaintiff's supplemental petition.

[4] These figures include time through the end of May only. City did not provide its time records from June through September, it argues, because plaintiff failed to comply with LR 54.3. City is right that plaintiff had an obligation to provide his time information first. However, this court had hoped that with the compressed schedule the parties would voluntarily exchange such information. Regardless, it is clear Ancel Glink and other City attorneys spent considerable time on this case post-May.

in excess of the 34 hours for which he has submitted time records.[5] (Id.) Finally, although attorneys in City's corporation counsel's office do not, and are not required to, keep detailed records of time spent on individual cases, this court has no doubt that the City's co-lead trial counsel, Sharon Baldwin, along with other corporation counsel who worked on this matter,[6] spent hundreds of hours working on this case. Trial of this case alone, which lasted eight full days, would have consumed at least 96 hours of Ms. Baldwin's time.[7] Therefore, in light of the number of hours, attorneys, and legal assistants working on this case on behalf of the City, this court cannot say that L & L's hours were aggregately unreasonable.

In addition, the City's litigation tactics multiplied the number of hours L & L's attorneys otherwise would have had to spend. As is more fully described in Plaintiff's Post-Trial Supplement to His Previously-Filed Renewed Motion for Sanctions (Dkt. No. 263), during the discovery phase of this litigation, the City's counsel time and time again failed to produce required and requested discovery, necessitating motions to compel and pre-trial appearances before Magistrate Judge Denlow. The bottom line is that the City itself, because of its counsel's dilatory, obstructionist, and, on occasion, deceitful pretrial conduct during the litigation of this case, is greatly responsible for

---

[5] In fact, plaintiff points out numerous hours where Ancel Glink attorney Darcy Proctor, the City's outside trial counsel, corresponded in some manner with David Zinder. (Pl.'s Reply, Ex. C.)

[6] Plaintiff identifies from the Ancel Glink, David Zinder and Hervas Sotos time records a myriad of hours spent by corporation counsel attorneys Jeff Givens, Robert Barber, and Nick Trovato, as well as time by the City's corporation counsel herself, Mara Georges, (Pl.'s Reply, Ex. B.), some of whom spent additional unrecorded time attending the trial (Tr. 100).

[7] It appears from looking at the number of hours expended by Ancel Glink attorneys Darcy Proctor and Allen Duarte that they billed on average about twelve hours per trial day while the trial was proceeding. The court would expect that City's co-lead trial attorney, Ms. Baldwin, would have spent at least this much time during the trial, not to mention the hundreds of hours necessary to prepare for trial.

what it contends to be an unreasonable number of hours. The undisputed evidence at trial established that the City improperly delayed in disclosing relevant documents and information during discovery even after judicial orders were entered compelling the disclosures. (Agreed Stipulation No. 1.) An additional example of the City's attorneys' improper withholding of documents is the City's failure to produce to plaintiff's counsel in response to Request No. 1 of Plaintiff's First Document Requests key City documents such as the Beavers Resolution (Pl.'s City Council Ex. No. 1) and related documents (Pl.'s City Council Ex. Nos. 2 and 3). These documents would have remained suppressed by the City if plaintiff's counsel had relied on the City's discovery responses and not subpoenaed the Police and Fire Committee of the Chicago City Council pursuant to Rule 45 just before the trial began. Moreover, the evidence at trial established that the City's counsel authorized City personnel to sign and serve false sworn interrogatory answers during discovery in this case (Pl.'s Ex. 4-A; Tr. 1000-06; Pl.'s Ex. 6-A; Tr. 1108-11), as well as false sworn answers to certain of Plaintiff's Second Set of Requests to Admit (Pl.'s Exs. 5-A & 5-B; Tr. 1131-41), thus requiring L & L to spend more time to ferret out the truth.[8] As the Seventh Circuit aptly observed

---

[8] During the trial, the City's counsel's dilatory tactics continued when they delayed in providing this court with documents as ordered. (Tr. 88-91.) A further and not insignificant example of the City's counsel's deceitfulness post-trial, which the court almost relied upon, appears in footnote 41, page 25, of City's Response to plaintiff's fee request, in which the City states that L & L attorney Rosenblatt billed time for "a) May 31, 2002, for 'internet research re: boxing match;' . . . c) June 12, 2002, for 'research boxing on tv;' . . . ." The court, upon reading this, initially believed that time should not be allowed. However, Jon Rosenblatt's actual billing records, from which City purportedly quoted, state, for May 31, 2002, "res. internet research re: *2/01* boxing match," and for June 12, 2002, "research *2/01* boxing on tv." (Pl.'s Mem. in Supp., Ex. F (emphasis added).) The material omission by the City of "*2/01*," which occurred twice in the City's Response, made what is a proper use of attorney time appear to be a waste of attorney time. Defendant Oshana had intimated an alibi to support his contention that he could not have attacked Garcia because he was watching boxing on television. Investigating such an alibi is an appropriate task for an attorney. In fact, the City itself expended three hours, albeit paralegal time, researching this issue. (Pl.'s Mem. in Supp., Ex. G "GO" entries for 10/4, 10/8, 10/9, 10/11/02.) It was appropriate attorney work for plaintiff because in order to prevail in this case his counsel had to and did prove that Oshana's alibi was not true. The City's false quotation

9

in Johnson v. Kakvand, 192 F.3d 656, 662 (7th Cir. 1999), "[A] party's uncooperativeness with pretrial proceedings will increase the amount of time that the opposing attorney must devote to the case, an increase that will then be reflected in the petition for attorneys' fees."

The time spent by L & L's attorneys and paralegals on this litigation, given the difficulty involved in obtaining proper discovery responses and material, as well as the difficulty inherent in proving a Monell claim, is clearly reasonable. Although the City attempts in hindsight to argue that L &L engaged in some excessive intra-office conferences[9] and overstaffed[10] and duplicated certain efforts,[11] in light of the overall reasonableness of the number of hours, the obstacles created by City's counsel's improprieties that plaintiff's counsel had to overcome, and the level of success achieved, this court finds, with slight exception, the total hours claimed by each L & L attorney and paralegal to be reasonable and, as set forth in the table below, awards plaintiff virtually all of the hours

---

caused L & L and this court to expend unnecessary time addressing the City's misrepresentation that such research was not appropriate for an attorney.

[9] However, as plaintiff points out, the City's attorneys engaged in hundreds of conferences talking among themselves. (Pl.'s Reply, Exs. B, C, D.) In addition, it is ironic for the City to argue that the amount of time recorded by each L & L attorney does not always correspond to that of the conferencing attorney when the City's records reflect the same inconsistencies. (Id., Ex. E.) It is clear from both parties that a large number of intra-office conferences were necessary for this complex case.

[10] The City cannot seriously argue that L & L overstaffed this case, in light of its own staffing. The City had several attorneys in the corporation counsel office and three outside law firms working on this case. Moreover, the City, like plaintiff, had three trial counsel. In addition, several more supervisory City attorneys attended the trial from time to time. (Tr. 100, 437.)

[11] Contrary to the City's arguments, this court finds that L &L sufficiently accounted for the time of each attorney. Although L & L used shorthand for many entries, they are clear enough to describe the tasks completed on the day in question and provide at least as much detail as the Ancel Glink time records. Moreover, this court cannot find that L & L spent too much time communicating with client Garcia, particularly in light of the fact-intensive nature of this case and attorneys' paramount professional obligation to keep clients informed. Likewise, this court cannot find that L & L billed excessive attorney time for non-legal tasks.

requested by each L & L attorney and paralegal.[12] (Pl.'s Mem. in Supp., Ex. A; Pl.' Supplemental Pet. at 3.)

C. The Lodestar Calculation

This court finds that the lodestar calculation of multiplying each attorney's reasonable hourly rate by his or her reasonable hours in this case yields the following reasonable attorneys' fee under 42 U.S.C. § 1988:

| Attorney | Rate | Hours | Amount |
|---|---|---|---|
| Jon Loevy | $295 | 1,373.25 | $405,108.75 |
| Arthur Loevy | $295 | 288 | $84,960.00 |
| Michael Kanovitz | $250 | 257.5 | $64,375.00 |
| Jon Rosenblatt | $220 | 168.25[13] | $37,015.00 |
| Amanda Antholt | $190 | 105 | $19,950.00 |
| Paralegals | $100 | 24.5 | $2,450.00 |
| | | | $613,858.75 |

II. No Enhancement or Reduction in the Lodestar Amount

The City argues that this court should reduce substantially any award of reasonable attorneys' fee. (Def.'s Resp. at 26.) Primarily, the City contends that because Garcia entered into a contingency fee agreement with L &L his recovery should be reduced. This court disagrees. In the

---

[12] Because plaintiff's failed claims are not unrelated nor "distinct in all respect from his successful claim[]," plaintiff is entitled to recover the time L & L spent on all claims against the City. Hensley, 461 U.S. at 440. Therefore, contrary to the City's argument, the hours expended on these unsuccessful claims should not be excluded. Here, plaintiff's claims "involve a common core of facts" and are "based on related legal theories." Id. at 435. The access to courts claim, as detailed in this court's opinion as to the City's motion for a new trial, is highly relevant to Garcia's Monell claim. As plaintiff points out, "every last hour spent pursuing the favorable documents which were withheld during discovery, as well as all of the time spent working to dislodge the missing John Doe's identity from Defendants, all independently contributed to bolstering Plaintiff's underlying (successful) case." (Pl.'s Reply at 29-30.) Additionally, as is detailed in the text, L & L achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Hensley, 461 U.S. at 434.

[13] This court agrees with City that Mr. Rosenblatt's 2.5 hours of time spent tabulating time on May 22, 2003, should be excluded. (Def.'s Resp. to Pl.'s Supplemental Pet. at 2.)

11

case at hand, as in most, the lodestar figure by itself represents a reasonable fee. See Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 872 n.12 (7th Cir. 1995). However, this court recognizes that awarding plaintiff the entire lodestar amount, which presumably would be paid to L & L, if it has not already been contractually assigned to L & L, and requiring plaintiff to pay L & L the agreed contingency fee would amount to more than a reasonable fee for L & L's services. By issuing this award of reasonable attorneys' fees to plaintiff, this court is foreclosing L & L from recovering more fees on this case unless those fees are incurred after the date of this order. The Rules of Professional Conduct of the Northern District of Illinois, which govern the conduct of all members of the bar of this district, mandate under Local Rule 83.51.5(a) that "[a] lawyer's fee shall be reasonable." By recovering any money under the contingency fee agreement, which would be more than what this court has determined to be a reasonable fee in this case, L & L would violate L.R. 83.51.5(a), which this court will not allow. Upon remittitur, this court determined that plaintiff suffered, and was entitled to recover, $250,000.00 in damages. Plaintiff should recover this amount, and L & L is entitled to a reasonable fee, the lodestar amount. Accordingly, this court will not reduce the lodestar amount, but Garcia does not have to pay any contingency fee amount to L & L.[14]

This court is mindful of the dicta by Judge Posner at the end of his opinion in Price v. Marshall Erdman & Associates, Inc., 966 F.2d 320 (7th Cir. 1992), an Age Discrimination in Employment Act case, which commented approvingly on the rejection of a fee enhancement for contingency fee cases in the then recent Supreme Court decision of City of Burlington v. Dague, 505 U.S. 557 (1992). Judge Posner stated:

---

[14] This court cannot, contrary to plaintiff's arguments, increase the award because of the contingency agreement and degree of risk involved. City of Burlington v. Dague, 505 U.S. 557, 567 (1992).

12

> The cases, however, assume that the goal of attorney-fee shifting is to obtain competent counsel rather than to make litigation costless to prevailing plaintiffs. The assumption seems right to us. We are speaking, recall, of *substantial* money cases, where even after paying a contingent fee (reduced in effect by the judicial award of fees, which goes to the plaintiff himself), the plaintiff nets a substantial award. The prospect of such an award should be enough to induce the plaintiff to sue, and the prospect of the contingent fee should be enough to induce competent counsel to represent him. No more is necessary to achieve the essential goals of the civil rights laws. The nation is awash in litigation. We have no reason to think that more generous rules for calculating attorneys' fees in fee-shifting cases are necessary in order to ensure that plaintiffs in general, and civil rights plaintiffs in particular, will be able to vindicate their legal rights.

Price, 966 F.2d at 328 (citation omitted). While Judge Posner is right, that in substantial money cases market forces will ensure competent counsel for civil rights plaintiffs, Congress saw the need to enact fee-shifting statutes like § 1988 for all civil rights cases. This court recognizes, of course, that one of the primary purposes of fee-shifting statutes is to encourage competent counsel to provide representation in cases where the potential damages recovery is small, where a contingency fee agreement would not fairly compensate counsel for his or her time.[15] However, the fee shifting statutes are not limited to only cases with potential limited recoveries. Congress found it necessary to allow the prevailing party in all civil rights cases, including substantial money cases, to recover reasonable attorneys' fees.

To reduce a reasonable fee award by the contingency fee amount, which in turn is deducted from plaintiff's compensatory damages recovery, is to reward the adjudicated civil rights wrongdoer

---

[15] As the Seventh Circuit stated in a more-recent opinion:
A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.
Dunning, 62 F.3d at 873 n.13.

by reducing the payment of the sum of compensatory damages and court-awarded fees the adjudicated wrongdoer must pay for the wrongful conduct. This certainly does not further the aim of the civil rights laws of the United States. It decreases the incentive of potential civil rights plaintiffs and civil rights defendants in contingency fee cases to settle a fee petition claim because the total payout by an adjudicated wrongdoer would always be less than the damage verdict and the reasonable fee award, as the sum of these two amounts would always be reduced by the percentage of the contingency fee agreement between the plaintiff and the plaintiff's counsel. This could not be what Congress intended in such cases.

Indeed, in this case, as this court has determined in a separate opinion issued today, the appropriate amount of compensatory damages Garcia should recover is $250,000.00, and this court finds the reasonable attorneys' fees and costs Garcia should recover under § 1988 is $647,951.81. All counsel, including L & L, are professionally obligated under this district's Local Rules to obtain no more than a reasonable fee for professional representation of a client. L.R. 83.51.5. Congress, in enacting § 1988, stated that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs," no more and no less. 42 U.S.C. § 1988(b). To allow plaintiff's counsel to enforce the recovery of an attorneys' fee amount pursuant to a contingency fee agreement over and above a court-ordered reasonable fee is unfair to the plaintiff, so long as the plaintiff pays his counsel the reasonable fee awarded by this court.

Although the Hensley Court identified several factors for a district court to consider, it explained that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," Hensley, 461 U.S. at 434 n.9, and that the "results obtained" is another "important factor." Id. at 434. Additionally, the Court has made clear that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success

obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436); see also Johnson v. Kakvand, 192 F.3d 656, 662 (7th Cir. 1999) ("The degree of success a plaintiff obtains is one of the most important factors to be considered in determining whether the attorneys' fees requested by the plaintiff are reasonable."). This court finds that most, if not all, of the Hensley factors were properly considered in arriving at the reasonable hourly rates and reasonable number of hours. In the case at hand, were it not for the skill and determination of Garcia's counsel, the violations of Garcia's civil rights by the City proven by the evidence at trial would not have been established. Plaintiff achieved tremendous success in this litigation and should be fully compensated. The lodestar figure is a reasonable determination of this amount.

III. Expenses and Costs

Plaintiff seeks $39,759.70 in expenses. In order for this court to award plaintiff costs, this court "must determine that the expenses are allowable cost items and that the costs are reasonable, both in amount and necessity to the litigation." Weihaupt v. Am. Med. Ass'n, 874 F.2d 419, 430 (7th Cir. 1989). Some of plaintiff's costs may be recoverable as part of Garcia's reasonable attorneys' fees, such as "postage, long-distance calls, xeroxing, travel, paralegal, and expert witnesses . . . ." Heiar v. Crawford County, 746 F.2d 1190, 1203 (7th Cir. 1984). This court finds that most of plaintiff's requested costs are reasonable, either as recoverable costs under Rule 54 or as part of reasonable attorneys' fees under § 1988. City, however, raises several well-grounded objections to plaintiff's request for expenses.

Quite frankly, this court is disappointed with both parties' work with respect to the expenses submission. City, in violation of Local Rule 54.3, failed to produce any evidence of its costs; thus, this court has no evidence with which to compare plaintiff's costs. More importantly, plaintiff, however, in order to recover his costs, has the burden of proving that his expenses were reasonable

and necessary to this litigation. With his original petition, plaintiff merely attached copies of numerous receipts. (Pl.'s Mem. in Supp., Ex. L.) With his supplemental petition, plaintiff provided this court with an affidavit further explaining some of the receipts and a spreadsheet purportedly listing all of his expenses incurred. (Pl.'s Supplemental Pet., Ex. F.) With regard to many of the expenses, this documentation is grossly deficient.

First, this court was unable to "match up" every spreadsheet entry with a corresponding receipt. Second, several entries in the "Notes" column of the spreadsheet appear to be incorrect. For example, the February 12, 24 (two entries), 26, and March 4 and 7, 2003, entries on page two from vendor "Checker Taxi Association, Inc." reflect that they were for "Exhibit supplies," which this court doubts is correct, as opposed to "Cab" expenses. Third, at least two duplicate entries exist on the spreadsheet. A $98.82 charge on April 21, 2003, at Office Depot for "Office Supplies" is listed twice on page two, and a $198.41 charge on April 20, 2003, at Kinko's for "Copying" appears twice also on page two.[16] Fourth, plaintiff provides no sub-totals for the different categories of expenses. The sub-totals City sets forth on pages 28 and 29 of its Response do not correspond to this court's own totals. This may be because plaintiff revised his expense request downward from the time of the filing of his original petition. This court has no way of verifying this, however, because the spreadsheet apparently provided to City was not filed with this court. Fifth, there are major discrepancies between the City's statements as to the total for postage and messenger expenses and the figures on plaintiff's spreadsheet. Even if this court viewed the FedEx expenses as postage, rather than courier/messenger, the figures do not equate. Sixth, plaintiff claims $2,403.30 from "Show It" for exhibit supplies. Plaintiff's counsel, however, admitted in a letter to City's counsel

---

[16] A $200.10 charge on April 14, 2003, at Kinko's for copying is listed twice on page three, but it appears from the receipts that there were two separate Kinko's orders for this amount on this date.

16

that the parties had agreed to split this cost and that the amount should be adjusted accordingly. (Pl.'s Mem. in Supp., Ex. C, Aug. 5, 2003, Ltr. from Jon Loevy.) As no reduction of the $2,403.30 claim has been included in the supporting materials submitted, apparently it was not.

As a result of these serious deficiencies, this court is unable to confidently rely on the spreadsheet attached to plaintiff's supplemental petition. In reviewing the receipts, many of them have "Garcia" handwritten on them. However, plaintiff fails to identify the purpose of many of these expenses (other than for this litigation in general). This court does not know how many sets of copied documents were made, or why traveling by taxi was necessary, or why the office supplies for which reimbursement was asked were not overhead. As a result of these deficiencies, which exist throughout the spreadsheet, this court will order reimbursement of only the most obviously recoverable expenditures, which from the documentation provided were clearly case-specific and necessary: filing fee; court reporter fees;[17] subpoena fees, including service; expert witness fees, including expert witness hotel expenses; and the costs of x-rays.[18] Because plaintiff has not met his burden with respect to the following categories of expenses listed in "Notes" section of the spreadsheet, they are excluded in their entirety: "Cab," "Copying," "Postage," "Exhibit supplies," "Parking," and "Courier/messenger." Totaling up the allowed expenditures, plaintiff is entitled to $34,093.06 in costs and expenses.

---

[17] The April 4, 2003, U.S. District Court entry is listed as "Copying" but appears from the receipt to be a court reporter fee. As such, it is recoverable.

[18] Contrary to City's arguments, this court cannot find that INSPE expert fee nor the copies of x-rays were unnecessary to plaintiff's case.

## CONCLUSION

For the reasons stated above, plaintiff is awarded $647,951.81 in attorneys' fees and costs under 42 U.S.C. § 1988 against the City of Chicago, which is ordered to pay this amount by October 21, 2003, with interest from the entry of the judgment until paid. There being no just reason for delay, judgment is entered pursuant to Rule 54(b).

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: September 19, 2003

18